HOLMES (HUNT v.). See Case No. 6,890.

## Case No. 6,639.

### HOLMES v. HUTCHINSON.

[Gilp. 447.] [1]

District Court, E. D. Pennsylvania. Nov. 22, 1833.

SEAMEN—MEDICAL ATTENDANCE—ACCIDENT.

1. Where a seaman in a foreign port, contracts an ordinary disease without any fault of his own, and remains on board a vessel which is properly provided with a chest of medicines, the expenses for the attendance and advice of a physician, if evidently necessary for the safety of his life, are to be deducted from his wages.

2. Where a seaman is disabled by an accident in the actual discharge of his duty, he is to be cured at the expense of the ship.

[Cited in Richardson v. The Juillette, Case No. 11,784.]

[Cited in Holt v. Cummings. 102 Pa. St. 215.]

[This was a libel in admiralty by Fordyce Holmes against Joseph B. Hutchinson, master of the brig Paragon.]

Mr. Troubat, for libellant.
Mr. Hurst, for respondent.

HOPKINSON, District Judge. The libel, in this case, states a contract for a voyage from the port of Philadelphia to Vera Cruz, and thence back to Philadelphia, at the wages of fourteen dollars a month. The voyage commenced on the 22d June, 1833, and ended on 15th October, of the same year. The libellant avers a performance, in all things, of his duties as a mariner, and, after admitting certain credits, claims a balance of thirty-five dollars and twenty-five cents to be due to him. On the part of the respondent is claimed a further credit of sixteen dollars, being the amount of a physician's bill paid by the master of the vessel, for attending the libellant in a sickness at Vera Cruz. The only matter in dispute between the parties is, whether this bill is chargeable to the libellant or to the owners of the brig. The sickness, with which the libellant was afflicted, was a typhus fever, which was not contracted by any fault or negligence on his part, nor does it appear to be an endemic disease of the climate. The brig had a medicine chest, properly put up, according to the directions of the act of congress, and from it the libellant was supplied with the medicines used in his sickness, and he remained on board the brig. The physician was sent for by the captain when the libellant was in a state of deliri-

um, and the charge is wholly for medical advice and attendance.

This is a case, in which: 1. The sickness was not produced by the fault of the seaman, nor contracted previous to his shipment. 2. It was not produced by any accident while engaged in service on board of the brig and in the discharge of his duty. 3. It was not an endemic disease of the climate to which the seaman was exposed. 4. It was not a contagious disease, dangerous to the crew, which made it necessary for their safety, to remove the man from the vessel, thereby incurring extraordinary expenses. 5. It was an ordinary disease which the man might have had any where, in any other place or employment.

I have found no precedent for charging the ship, in such a case, with the physician's bill for advice and attendance, even by judges most inclined to favour the seaman. It is not a question of boarding or nursing on shore during a sickness, but for the services of a physician evidently necessary for the safety of the life of the man; it would have been inhuman if the captain had not sent for him. But if the expense of medical aid is to be a charge upon the owners of the vessel, the master may be reluctant to obtain it, or altogether neglect it. The seaman, therefore, has an interest in taking the charge upon himself, although the physician may be called by the direction of the captain, in circumstances when the seaman could not be consulted about it.

The law of the United States seems to be settled on this subject, on the general principles of the maritime law, with such modifications as our act of congress has introduced. It is not to be doubted that, when a sailor is disabled in the actual performance of his duty, he is to be cured at the expense of the ship; but, on the other hand, when the sickness or disability is the consequence of his own misconduct or irregularities, he must be cured at his own charge. Judge Peters was not satisfied that the sick seaman should pay for medical advice, but that such advice, as well as the medicine, should be furnished at the charge of the ship, to complete the intent of the provision of the law, because of the inefficacy or danger of medicines administered ignorantly or carelessly. But he admits that the weight of authority is against this opinion, and he, very properly, yields to it; and agrees that the seaman had better pay for medical advice than risk the consequences of an indiscreet use of the medicine chest. He says, in the case of Walton v. The Neptune [Case No. 17,135]: "By the terms, in the alternative in the act of congress, that if the ship has no medicine chest, the owners shall pay the physician's bill, it seems, that if the ship is furnished with the chest, the sailor must pay for advice; but the ship must supply the medicine." In another case, that of Swift v. The Happy Return [Id. 13,697],

the same judge speaks again on this subject: "The charge for medical advice is commonly mixed, in the gross, with the general items, per day or week, for boarding and attendance. The sailor must only pay for the former." After some further remarks, he says: "When one of a crew is seized with an infectious disease, he should be removed from the rest, and sent on shore, at the ship's expense, for the safety of the whole, and the advantage of the owner, who must count on extra disbursements if he will trade to ports or places, liable to such casualties." He adds that it ought to be borne by the ship, "from motives both of humanity and justice." This is well when the sick man is taken from the ship for the safety of the crew and the advantage of the owner, but I do not feel the force of any claim, on the part of the seaman, because the vessel is trading to a port or place liable to dangerous diseases. This he knew when he made his contract, and if it exposed him to extra expenses, as well as risk, it may be presumed that he took them into his calculation in fixing the price of his services, the amount of his wages; in this way, the owner has paid extra disbursements for this danger and these expenses. We shall have a very uncertain rule, if the legality of this charge upon the owners of a vessel is to be governed or regulated by the healthiness of the trade in which she may be employed, or the places to which she may go. In the conclusion of the judge's observations, he says: "Although, in ordinary cases, having a medicine chest on board may be a compliance with the act of congress, exceptions should be made where dangerous diseases require and compel extraordinary remedies and expense." By "dangerous diseases" we must understand such as had been previously mentioned by the judge, that is, infectious diseases, dangerous to the rest of the crew, and not merely dangerous to the person afflicted; for in the latter sense every disease might be included, according to its violence and the condition of the patient. In the case of Harden v. Gordon [Id. 6,047] the court said, that "its researches had not enabled it to detect a single instance in which the maritime laws of any foreign county throw upon seamen, disabled or taken sick in the service of the ship, without their own fault, the expenses of the cure." And it was also decided in that case, "that the act of congress had not changed the maritime law, except so far as respected the expenses of medicine and medical advice, when the proper medicine chest was on board, and within reach of the seaman." It is added, that "the charges of nursing and lodging, in all cases, and even of medicines and medical advice, in cases of a removal from the ship, were still to be charges against the ship."

It must now be taken to be the law of the United States, under our act of congress,

that in the case of an ordinary sickness, not infectious or dangerous to the crew so as to render a removal from the ship prudent or necessary, and when no such removal is made, and the ship is provided with a medicine chest according to the directions of the act of congress, the medical advice of the sick seaman, is not chargeable to the ship. Even under this modification of the general maritime law, it cannot be denied that sailors are highly favoured, and have advantages and privileges which belong to no other men who labour for stipulated wages. Other labourers in agriculture, in trades, in mechanical arts, are not only obliged, in case of sickness, accident, or other disability to maintain themselves and pay all the expenses of nursing, medicine, and medical attendance, but their wages, their only source of revenue, the only means by which they can provide for such expenditures, are stopped. The sailor, on the contrary, is still maintained by the ship, nursed at her expense, and furnished with necessary medicines, and his wages run on although he may not do a stroke of work for the whole voyage. It is true the seaman may lose his wages, however hardly earned, by casualties, to which the labourers on land are not exposed; but, in time of peace, they are of rare occurrence, and are scarcely considered in the contract. When they are more considerable, they have a proportionable influence on the rate of wages.

Decree: That the libellant, Fordyce Holmes, recover and have paid to him the sum of nineteen dollars and twenty-five cents, with costs.